**KRONENBERGER ROSENFELD, LLP**
Jeffrey M. Rosenfeld (Bar No. 222187)
Leah Rosa Vulić (Bar No. 343520)
548 Market St. #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jeff@kr.law
leah@kr.law

Attorneys for John Doe

GAMMA LAW, P.C.
Marco Martemucci (SBN 255054)
One Sansome Street, Suite 3500
San Francisco, California 94104
Tel.: 415.901.0510
Fax: 415.901.0512
MMartemucci@gammalaw.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re 17 U.S.C. §512(h) Subpoena to CLOUDFLARE, INC.** | Case No. 4:25-mc-80147-YGR <br><br> **[PROPOSED] PROTECTIVE ORDER RE: DMCA SUBPOENA (17 U.S.C. §512(h))** |

**GOOD CAUSE STATEMENT**

This matter arises from a subpoena issued pursuant to 17 U.S.C. §512(h) to Cloudflare, Inc., a U.S.-based service provider, at the request of Shueisha Inc., a non-U.S. rights holder (the "DMCA Subpoena"). The DMCA Subpoena seeks identifying information for the individual associated with the specific URL(s) identified in Shueisha's DMCA takedown notice and listed in **Exhibit A** hereto, which Shueisha attributes to "John Doe."

There is currently no civil infringement lawsuit between Shueisha and John Doe in any United States court. This proceeding is a pre-suit identification request under 17 U.S.C. §512(h). It is not ordinary discovery in an active civil action.

This Protective Order prohibits the disclosure and use of John Doe's identity for any purpose unrelated to the purpose of the DMCA Subpoena.

Any information sufficient to identify John Doe ("Doe Identity Information," as defined in §2.1 below) shall be treated as confidential, shall not be publicly disclosed, and shall be designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under this Protective Order.

Good cause exists under 17 U.S.C. §512(h)(2)(C), Fed. R. Civ. P. 26(c), and Fed. R. Civ. P. 45 to impose strict limits on the use and disclosure of Doe Identity Information in this narrow, pre-suit identification proceeding, and to prevent misuse.

**FOR GOOD CAUSE SHOWN, IT IS HEREBY ORDERED:**

1. PURPOSES AND LIMITATIONS

1.1 Sole Purpose of Use.

Protected Information, including any Doe Identity Information as defined in §2.1, may be used only to provide Outside Counsel of Record admitted to practice in the United States with Doe Identity Information for the individual, if any, alleged to be responsible for the specific URL(s) identified in Shueisha's DMCA takedown notice and listed in Exhibit A. Such information may be disclosed only to the limited recipients authorized in §7.1, and may not be used to initiate direct contact with John Doe.

1.2 Prohibited Uses.

Absent further written order of this Court, no Party, counsel, agent, or other person may

disclose or use any Protected Information, including any Doe Identity Information, for any purpose other than the limited purpose set forth in §1.1. Prohibited uses include, without limitation:

(a) Initiating or attempting any direct contact with John Doe, including by email, phone, social media, physical mail, in-person approaches, or purported "service" of documents. Direct contact is permitted only if this Court expressly authorizes service of process in a filed U.S. copyright infringement action brought within 180 days of disclosure under this Order and based solely on the URL(s) identified in Exhibit A.

(b) Attempting to negotiate, demand, or solicit any "license," "settlement," "cease-and-desist," payment, admission, or other concession directly from John Doe. Communication through John Doe's counsel is permitted. If John Doe is unreachable through his undersigned counsel, however, Shueisha Inc.'s Outside Counsel of Record may apply to this Court (through the Court's designated discovery dispute process, and after fulfilling meet-and-confer requirements), for reconsideration of this provision.

(c) Any public dissemination or publicity, including disclosure to media, use for public-relations leverage, or any attempt to affect John Doe's reputation, employment, business relationships, or online accounts.

(d) Any use in, or disclosure to, any other lawsuit, investigation, arbitration, administrative or regulatory process, law-enforcement inquiry, or foreign proceeding of any kind.

(e) Any use to assert, investigate, expand, or build claims concerning any domain, URL, subdomain, mirror, site, project, content, or account that is not expressly listed in Exhibit A to this Order.

(f) Any use to seek, support, or justify additional subpoenas, demands, or requests for information from any service provider or other third party beyond the limited purpose authorized by §1.1, or any use of Protected Information, alone or together with payment or billing records, IP address and timestamp data, location data, device or browser identifiers, cookie or account-ID data, or publicly available sources, to expand, cross-reference, or build any broader profile of John Doe absent express further order of this Court.

(g) Any disclosure of Protected Information, including Doe Identity Information, to any

person or entity other than (i) this Court, or (ii) Outside Counsel of Record admitted to practice in the United States and their necessary staff or experts who have executed the acknowledgment required by §7 and are bound by this Order. This prohibition includes, without limitation, client personnel, in-house counsel, corporate officers, employees, affiliates, investigators, vendors, contractors, industry associations, trade groups, collecting societies, anti-piracy or enforcement vendors, non-U.S. counsel, non-U.S. agents, foreign regulators, ministries, law-enforcement authorities, or government officials.

1.3 No Cross-Border / No Internal Dissemination.

Unless this Court orders otherwise, Protected Information shall not be transferred, stored, backed up, or accessed outside the United States, and shall not be disclosed to in-house counsel, corporate officers, employees, investigators, affiliates, contractors, industry associations, or non-U.S. counsel or agents of the Subpoenaing Party. Access is restricted to the Court and to Outside Counsel of Record admitted in the United States (plus their necessary staff or experts who sign the acknowledgment described in §7 and are bound by this Order).

1.4 Counsel-Only Channels.

The parties' U.S. Outside Counsel of Record have already established working lines of communication regarding this subpoena, including meet-and-confer discussions regarding scope and protection. All further communications, notices, and service related to Doe shall proceed through counsel. Direct contact with Doe (including by email, phone, social media, or postal mail) is prohibited unless and until this Court authorizes such contact.

1.5 No Merits Finding.

This Order governs only the §512(h) identification process. It makes no findings and permits no inference regarding infringement, liability, willfulness, damages, jurisdiction, venue, or any other merits issue.

3

**[PROP] PROTECTIVE ORDER RE: DMCA SUBPOENA**

1

## 2. DEFINITIONS

2.1 "Doe Identity Information."

"Doe Identity Information" means information sufficient to identify John Doe, including Doe's legal name and, if the Court so orders, street address, city, state, and zip code of residence or principal place of business. "Doe Identity Information" expressly **excludes** telephone numbers, email addresses, billing or payment data, account numbers, customer IDs, usernames, login identifiers, or technical or hosting information.

2.2 "Protected Information."

"Protected Information" means Doe Identity Information and any other information that could directly or indirectly reveal Doe's identity or control over the account associated with the URL(s) in Exhibit A, plus any copies, summaries, notes, excerpts, metadata, audit logs, or analyses derived from such information.

2.3 "Doe-Linked URLs."

"Doe-Linked URLs" means only the URL(s) identified in Exhibit A that (i) appear in Shueisha's DMCA takedown notice, D.E. 1-3, and (ii) are actually associated with Doe's Cloudflare account or zone (for example, two paths or mirrors of the same page). Other domains, mirrors, subdomains, historic content, or affiliated sites are outside the scope of this Order.

2.4 "Subpoenaing Party."

"Subpoenaing Party" means the applicant for the §512(h) subpoena (Shueisha Inc.) and its Outside Counsel of Record admitted to practice in the United States.

2.5 "Service Provider."

"Service Provider" means any non-party responding to the §512(h) subpoena with information, including Cloudflare, Inc.

2.6 "Outside Counsel of Record."

"Outside Counsel of Record" means counsel admitted to practice in the United States who have appeared or will appear in this matter. For the avoidance of doubt, "Outside Counsel of Record" does not include in-house counsel, corporate employees, foreign counsel, investigators, or

1   affiliates of the Subpoenaing Party.

2   2.7 "Unrelated Purpose."

3       "Unrelated Purpose" means any purpose other than the narrow identification purpose

4   described in §1.1. Without limitation, "Unrelated Purpose" includes publicity, settlement leverage,

5   non-U.S. enforcement, attempts to build damages theories, portfolio or licensing campaigns, or

6   efforts to obtain or compel additional data from other intermediaries.

7   2.8 "Expanded Production."

8       "Expanded Production" means any information request beyond the initial disclosure

9   authorized by §2.1 (for example: IP addresses, access logs, billing or payment information, account

10  numbers, host or origin server information, phone numbers, email addresses, or physical addresses).

11  Expanded Production is presumptively out of scope unless and until the Court orders otherwise on

12  a particularized showing.

13  2.9 "Correlation / Matching Techniques."

14      "Correlation / Matching Techniques" refers to any attempt to use Protected Information,

15  alone or together with other data, to expand, cross-reference, or build any broader profile of John

16  Doe. Other data includes payment or billing records, IP address and timestamp or location data,

17  device or browser identifiers, cookie or account-ID data, and any publicly available or open-source

18  research. Use of Protected Information for any such technique is prohibited absent further order.

19  3. SCOPE

20  3.1 Coverage.

21      The protections in this Order cover: (a) Protected Information itself; (b) any copies, excerpts,

22  summaries, notes, metadata, audit logs, or compilations that reveal Protected Information; and (c)

23  any testimony, presentations, communications, or filings that would reveal Protected Information.

24  3.2 Exclusions.

25      This Order does not restrict information that is (i) already lawfully in the public domain

26  prior to any production under this Order, or (ii) later becomes public through no breach of this

27  Order. Nothing in this subsection authorizes any Party or counsel to make Doe's identity, or any

28  Protected Information derived from subpoena compliance, public. Doe's identity is expressly

1   defined as AEO-only and non-public as set forth in §7.

2   3.3 Object Scope — Exhibit A Only.

3       Production is limited to the Doe-Linked URLs in Exhibit A. Requests targeting other URLs,

4   other domains, other mirrors, affiliates, or historic content are outside this Order and will not be

5   enforced.

6   3.4 Temporal Scope — Hard Anchors.

7       The only time period presumptively relevant is from the earliest verifiably known

8   appearance of the allegedly infringing content identified in Exhibit A (the "Earliest Event Date")

9   through the date of the §512(h) subpoena to Cloudflare. Attempts to demand "all historical data,"

10  "since account creation," or open-ended logs beyond this bounded window are presumptively

11  disproportionate and will not be ordered absent a particularized showing and further order of this

12  Court.

13  4. DURATION

14  4.1 Continuing Obligation.

15      The confidentiality and use restrictions in this Order continue to apply after this §512(h)

16  identification matter concludes, unless the Court modifies them.

17  4.2 Stay Pending Review.

18      Except for the minimal initial disclosure described in §2.1, any compelled Expanded

19  Production or use of Protected Information is automatically stayed during any motion for

20  reconsideration, objection, appeal, or request for further relief. During any such stay, Protected

21  Information shall be held solely by Doe's U.S.-admitted Outside Counsel of Record, and may not

22  be disclosed to, or used by, the Subpoenaing Party or its counsel.

23  5. DESIGNATING PROTECTED MATERIAL

24  5.1 Automatic AEO Status.

25      All Protected Information, including Doe Identity Information and any Expanded

26  Production the Court might later allow, is automatically designated "HIGHLY CONFIDENTIAL –

27  ATTORNEYS' EYES' ONLY" ("AEO") at the moment of production. No lesser designation (for

28  example, "Confidential" or "Outside Counsel Only" with corporate access) shall apply without

1  further order and sufficient showing of necessity by the party challenging the designation.

2      **In the alternative:** All Protected Information, including Doe Identity Information and any

3  Expanded Production the Court might later allow, is automatically designated "CONFIDENTIAL"

4  at the moment of production, and may only be disclosed to: Subpoenaing Party's U.S.-admitted

5  Outside Counsel of Record, and up to two Shueisha Inc. management personnel, who review and

6  execute the attached Acknowledgment and Agreement to Be Bound attached hereto as **Exhibit B**,

7  and who are disclosed to John Doe's U.S.-admitted Counsel of Record at least 48 hours prior to any

8  such disclosure.

9  5.2 Filing and Marking.

10      Any Protected Information must be filed, if at all, under seal, in compliance with Fed. R.

11  Civ. P. 5.2 and Civil L.R. 79-5. Public versions shall redact Doe Identity Information and any other

12  Protected Information. The public docket shall continue to refer to Doe as "John Doe."

13  5.3 Inadvertent Omissions.

14      If any Protected Information is produced without an AEO legend or similar marking, it is

15  still Protected Information and subject to this Order. The producing Service Provider or Doe's

16  counsel may correct the designation, and all Receiving Parties must treat it as AEO from the outset.

17  6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

18  6.1 No Downgrade of Doe Identity Information Absent Further Order.

19      Because the Court has ordered that Doe's identity may not be used or disclosed for any

20  purpose unrelated to the Subpoena, Doe Identity Information and any Protected Information

21  revealing Doe's identity may not be downgraded from AEO (or otherwise disclosed beyond AEO

22  recipients) without a further written order of this Court. The burden is entirely on the Party seeking

23  broader dissemination.

24  6.2 Meet and Confer.

25      If a Party believes that some produced material is over-designated and does not actually

26  reveal Doe Identity Information or other Protected Information, that Party shall notify John Doe's

27  counsel via written notice. To avoid ambiguity as to whether a challenge has been made, the written

28  notice must recite that the challenge to confidentiality is being made in accordance with this specific

1  paragraph of the Protective Order. The Parties shall attempt to resolve each challenge in good faith

2  and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of

3  communication are not sufficient) within 14 days of the date of service of notice. If no agreement

4  is reached, the Party may move the Court to downgrade the confidentiality level of the particular

5  Doe Identity Information or other Protected Information. Until the Court rules, the material remains

6  at its current AEO designation.

7  6.3 Judicial Intervention.

8        If the Parties cannot resolve a challenge without court intervention, the parties shall follow

9  the Court's Standing Order in Civil Cases regarding Discovery and Discovery Motions. The parties

10  may file a joint letter brief regarding retaining confidentiality within 21 days of the initial notice of

11  challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve

12  their dispute, whichever is earlier. If, after submitting a joint letter brief, the Court allows that a

13  motion may be filed, any such motion must be accompanied by a competent declaration affirming

14  that the movant has complied with the meet and confer requirements imposed in the preceding

15  paragraph. The Court, in its discretion, may elect to transfer the discovery matter to a Magistrate

16  Judge.

17        In addition, the parties may file a joint letter brief regarding a challenge to a confidentiality

18  designation at any time if there is good cause for doing so, including a challenge to the designation

19  of a deposition transcript or any portions thereof. If, after submitting a joint letter brief, the Court

20  allows that a motion may be filed, any motion brought pursuant to this provision must be

21  accompanied by a competent declaration affirming that the movant has complied with the meet and

22  confer requirements imposed by the preceding paragraph. The Court, in its discretion, may elect to

23  refer the discovery matter to a Magistrate Judge.

24        The burden of persuasion in any such challenge proceeding shall be on the Designating

25  Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose

26  unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions.

27  Unless the Designating Party has waived the confidentiality designation by failing to file a letter

28  brief to retain confidentiality as described above, all parties shall continue to afford the material in

1  question the level of protection to which it is entitled under the Producing Party's designation until

2  the court rules on the challenge.

3  7. ACCESS TO AND USE OF PROTECTED MATERIAL

4  7.1 AEO Recipients Only.

5       Protected Information may be disclosed only to: (a) the Court and its personnel; (b) Doe's

6  Outside Counsel of Record admitted in the United States and their necessary staff or experts who

7  sign an acknowledgment agreeing to be bound by this Order; and (c) if the Court so orders, the

8  Subpoenaing Party's Outside Counsel of Record admitted in the United States and their necessary

9  staff or experts who sign that same acknowledgment. No other person or entity, including in-house

10  counsel, corporate officers, employees, foreign counsel, investigators, affiliates, vendors,

11  contractors, industry associations, or any governmental authority, may receive Protected

12  Information absent further written order of this Court.

13  7.2 Storage and Security.

14       Protected Information shall be stored and processed only in the United States, under

15  encryption and tamper-evident access logs, on systems controlled by Outside Counsel of Record.

16  No cross-border transfer, remote access from abroad, foreign backup, or foreign mirror is permitted

17  absent prior order.

18  7.3 Final Compliance Certification.

19       Within 10 days after destruction is required under §13.4 or §13.5, the Subpoenaing Party's

20  U.S.-admitted Outside Counsel of Record shall file under seal a single declaration, made pursuant

21  to 28 U.S.C. §1746, certifying that: (a) all Protected Information has been destroyed, except for

22  court-sealed filings and the single archival copy permitted to Doe's counsel; (b) no Protected

23  Information was disclosed outside AEO recipients authorized by this Order; (c) no cross-border

24  transfer, storage, backup, or access occurred; and (d) no direct contact, demand, threat, request for

25  payment, settlement approach, or other communication was made to John Doe except as expressly

26  authorized by this Court for service of process under §1.2(a).

27  7.4 No Direct Contact or Service on Doe Without Leave.

28       Protected Information may not be used to contact, demand from, or serve John Doe directly.

1  Service or notice to Doe shall proceed only through Doe's U.S.-admitted Outside Counsel of Record

2  unless this Court expressly authorizes direct service in a filed U.S. action.

3  <u>8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED ELSEWHERE</u>

4  <u>8.1 No Cross-Use</u>.

5       Protected Information shall not be disclosed in, or used for, any other court, tribunal, agency,

6  law-enforcement inquiry, administrative office, foreign proceeding, or parallel dispute, nor used to

7  support any new subpoena, request, or demand to any third party, without prior written order from

8  this Court.

9  <u>8.2 Notice</u>.

10      If any person in possession of Protected Information receives a subpoena, order, demand, or

11  request from another forum seeking such material, that person must: (a) promptly notify Doe's

12  Outside Counsel of Record, and provide a copy of the demand; (b) promptly provide the requester

13  with a copy of this Order; and (c) cooperate in allowing Doe to seek protection from this Court

14  before any disclosure. If this Court asserts protection, no disclosure shall occur unless and until this

15  Court orders otherwise.

16  <u>9. A NON-PARTY'S PROTECTED MATERIAL</u>

17  <u>9.1 Service Providers</u>.

18      This Order applies to a Service Provider (Cloudflare) that produces information responsive

19  to the §512(h) Subpoena. Any Doe Identity Information or other Protected Information produced

20  by such a Service Provider shall automatically be treated as AEO under this Order. Nothing prevents

21  a Service Provider from requesting additional or greater protections.

22  <u>10. UNAUTHORIZED DISCLOSURE</u>

23      If any Receiving Party (including any Outside Counsel of Record, staff, or expert) learns

24  that Protected Information has been disclosed, accessed, copied, exported, transmitted, stored, or

25  otherwise used in violation of this Order, that Party must immediately: (a) notify Doe's Outside

26  Counsel of Record, within 24 hours of discovery of the unauthorized use or disclosure; (b) take all

27  reasonable steps to retrieve and sequester the material and prevent further dissemination; (c) inform

28  every person who received the material that it is subject to this Order and must be kept confidential

1  and destroyed; and (d) provide a sworn declaration under 28 U.S.C. §1746 describing the nature

2  and scope of the disclosure and the remedial steps taken.

3  <u>11. INADVERTENT PRODUCTION / CLAWBACK</u>

4        If privileged, work-product, or otherwise legally protected material is inadvertently

5  produced, Fed. R. Evid. 502 applies. The producing Party or Service Provider may claw back such

6  material by written notice. All Receiving Parties must promptly return or destroy the inadvertently

7  produced material. Such inadvertent production or disclosure does not constitute waiver of any

8  applicable privilege.

9        Nothing in this Order waives any objection to scope, burden, jurisdiction, venue, personal

10  jurisdiction, service, admissibility, proportionality, or the merits.

11  <u>12. MISCELLANEOUS</u>

12  <u>12.1 Filing Under Seal</u>.

13        Protected Information, including Doe Identity Information and any Expanded Production,

14  may not be filed publicly. Any filing that would reveal Protected Information or Doe Identity

15  Information must be submitted under seal and must comply with Fed. R. Civ. P. 5.2 and Civil L.R.

16  79-5. Public versions shall redact Doe's identity, and the public docket shall continue to refer to

17  Doe as "John Doe."

18  <u>12.2 Cost Allocation / No Duty To Create New Data</u>.

19        The Service Provider shall not be required to generate new reports, run new scripts, or

20  compile new datasets beyond what exists in the ordinary course of business. Reasonable production

21  costs may be shifted to the Subpoenaing Party, subject to fee motion if disputed.

22  <u>12.3 Right to Further Relief</u>.

23        Nothing in this Order limits the right of any person to seek modification of this Order from

24  the Court.

25  <u>12.4 Court Control</u>.

26        Only this Court may modify, relax, or release any provision of this Order. Cross-border

27  transmission, derivative use, direct contact with Doe, or any other deviation requires a written order

28  from this Court.

13. FINAL DISPOSITION

13.1 Initial Production Path.

The Service Provider (Cloudflare) may release responsive Doe Identity Information, or Expanded Production if so ordered by this Court, directly to Doe's and Subpoenaing Party's Outside Counsel of Record only, in a secure manner, with a designation of "CONFIDENTIAL – ATTORNEY'S EYES' ONLY – SUBJECT TO COURT ORDER." Under no circumstances shall Doe Identity Information or any other Protected Information be delivered to any client representative, to any foreign counsel or agent, or to any investigator, vendor, affiliate, or industry association, without further written order of this Court.

13.2 Certification and Audit.

The Final Compliance Certification required by §7.3 shall be filed after destruction under §13.4 or §13.5. Failure to timely certify, or evidence of non-compliance, may result in immediate sequestration or destruction of Protected Information and in sanctions.

13.3 No Direct Use for Service or Contact.

As provided in §1.2(a) and §7.4, production of Doe Identity Information under this Order does not itself authorize any direct service, demand, or other direct contact with Doe. Service on Doe shall proceed, if at all, through Doe's U.S.-admitted Outside Counsel of Record unless this Court orders otherwise in a filed U.S. action.

13.4 End-of-Case Destruction.

Within 30 days after the later of (i) final resolution of this §512(h) identification matter, including any appeals, and (ii) the conclusion or expiration of any U.S. copyright infringement action actually filed by the Subpoenaing Party against Doe and based solely on the Doe-Linked URLs in Exhibit A, each person in possession of Protected Information shall destroy all Protected Information and all copies, summaries, notes, metadata, and access logs that would reveal Doe's identity. One archival copy may be retained by Doe's U.S.-admitted Outside Counsel of Record only, and the Court may retain any sealed filings, for record-keeping and enforcement purposes.

13.5 No-Suit Reversion.

If, within 180 days after any disclosure of Doe Identity Information under this Order, the

1  Subpoenaing Party has not filed a substantive U.S. copyright infringement complaint against Doe

2  based solely on the Doe-Linked URLs in Exhibit A, then all Protected Information (except the single

3  archival copy permitted to Doe's counsel and any sealed copy held by the Court) shall be destroyed

4  immediately. The Subpoenaing Party's Outside Counsel of Record shall file under seal a

5  certification under 28 U.S.C. §1746 confirming destruction and confirming continued compliance

6  with this Order.

7

8  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:

9  DATED: _____, 2025                    **KRONENBERGER ROSENFELD, LLP**

10

11                                               By: _____
                                                      Leah Rosa Vulić

12

13                                               Attorneys for John Doe

14  DATED: _____, 2025                    **GAMMA LAW, P.C.**

15

16                                               s/_____
                                                      Marco Martemucci

17

18

19  **PURSUANT TO THE FOREGOING AND GOOD CAUSE APPEARING, IT IS SO**

20  **ORDERED.**

21

22  DATED: _____

23

24  _____

25  Hon. Yvonne Gonzalez Rogers, United States District Judge

26  Northern District of California

27

28

1

## **EXHIBIT A**

2

### **John Doe URLs**

3

Doe-Linked URLs referenced in Shueisha's DMCA takedown notice and in the §512(h)

4

subpoena to Cloudflare, consisting solely of the URL(s) actually associated with John Doe's

5

Cloudflare account:

6

7

https://www.mangajikan.com/chapter-441853.html

8

https://jpoo.alammanga.com/JP00/120647/3nfi22cjai.jpg.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT B</u>**

**<u>Acknowledgment and Agreement to Be Bound</u>**

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of _____ **[insert formal name of the case and the number and initials assigned to it by the court]**. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____